Please be seated. Your Honor, it's the third case of the morning. Call 208-314-8 from the State of Illinois v. Brandon R. Holmes. On behalf of the Avalanche, Ms. Linda Johnson. On behalf of the Avalanche, Ms. Sharon Chaney. Ms. Johnson. Good morning, Your Honor. Good morning. In this case, my client was found guilty of possession of cocaine with intent to deliver, and we believe that he was denied effective assistance of counsel in the trial court. I identified two specific instances that showed this ineffective assistance. The first example was that he failed to object to the testimony before the grand jury that was given by a police officer who was not present at the arrest and who was actually presenting hearsay testimony, and he never told the grand jury that his testimony was pure hearsay. And the prosecutor carefully questioned the officer so as to keep that fact from the grand jury. She just asked if he was familiar with the facts of the case but didn't ask him how he became familiar with the facts of the case or if he was just reciting information he'd read in another's report. Well, I mean, there's another way to look at that. She was aware of other cases that said that he shouldn't say, I saw, I was there, he in fact wasn't there, that he didn't perjure himself, but would distinguish it from another case that you're relying on in some ways. I agree. This is a case where I think the Lake County prosecutor's office has learned something from Oliver, and they did not have him actually lie, but I think you can lie by omission, too, when you don't tell somebody that you never actually saw them but you imply something through your testimony. And I don't blame the officer, really. It's the prosecutor's side. Don't the grand jurors ask questions, too? Absolutely. And in this case, did they ask questions that the record revealed? No, I don't believe they did. I think anyone who heard this would say, and I've never been on a grand jury, but I assume that you hear so many cases that it probably dulls the senses and you just do go along with what you're told, and you don't have any reason to doubt the officer, and so you assume that he's telling you the truth and that he's telling you what he saw and that he saw somebody throw drugs and that they found drugs right near him. And he didn't actually lie, as you said, Your Honor, but he misled them. And his testimony was slightly different. Hasn't the Illinois Supreme Court unequivocally stated that you do not have to inform the grand jury that the testimony was hearsay in People v. Creek? I think that you don't have to specifically inform, but you can't imply that you're not presenting hearsay. You know, it's misleading them by not saying this is the officer's report stated. I mean, that wouldn't have diminished his testimony in any respect. Are you suggesting that he should have said that I'm unfamiliar with the facts in the case and then testify? No, Your Honor, I'm not. I'm trying to think if I were a prosecutor, how would I couch or describe this as being something whereby I am testifying based upon hearsay and I'm testifying about my knowledge of the case based upon hearsay and how would I describe it? And I can't think of a better term other than I'm familiar with it, unless I'm more specific in saying I'm familiar with the case. Even though I didn't observe the transactions, I heard credible people tell me what was going on and I read police reports upon which my opinion is based. That's the only way I think I could come up with a better explanation of the situation. And I don't think that's required. I don't think that's required, but there's nothing wrong with doing that. And I don't know why prosecutors feel the need to hide from a grand jury that the officer wasn't there. And he's just, why not just say he read police reports? And why not keep the jury, let the grand jury know the truth? And I think that they are offending the judicial process by this. If they want to just hand police reports to grand juries, you can do that too. But they should be given the truth just because of the grand jury and not the actual fact finders. And that's the basis that we thought his conviction, Mr. Holmes' conviction, should be reversed outright. We also believe that it was denied effective assistance based on the dog testimony. What did the dog say? The dog said that there were drugs and that this man held them. That's how it was interpreted in the trial court. The first officer, Valco, testified that he found the dogs where the dog had indicated they were. Well, the dog, as you indicated, did not say anything. And what he did was he downed, well, he didn't down, actually. He put his paws on the railing and tried to jump over the porch, which I don't think is the same thing as a down or a tap on it. Isn't that exactly the same place where the officer saw something thrown and before the dog even got there the officer found some cannabis? When you say exact same place, I think the officer was not all that clear about, I mean, you know, he saw somebody throw something and Valco testified that he was watching the guy he was running and that he didn't see where the stuff landed, whatever the shiny, clear object was. So he saw something shiny going to the air. It wasn't the general direction. I'm not disputing that. But in this case, the dog was brought in to do an article search. And the officer explained, Officer Mahoney, who was the canine officer, explained that he was following a person sent from an article. Well, Officer Mahoney said that he started from the area where the defendant was held, but he didn't tell us what article the dog was allowed to sniff. So I don't know if he was brought to the defendant and allowed to sniff his foot or his shoe or if he sniffed anything, if he was just roaming the area. That's a foundational issue, correct, for that testimony? I don't think that there is any foundational issue, really, because this evidence is not admissible to establish a factual proposition in a criminal proceeding. You were kind of arguing the evidence, and there wasn't anything to show what the dog sniffed. I understand the Cruz argument, but didn't this attorney actually object to lack of foundation and object based upon Cruz? He did in an untimely manner. He waited until after Valco had testified, and then he brought up his objections and found the Cruz case. But by then, the die was cast, the evidence was already before the jury. Did the jury contain any motion to reconsider after the trial? The judge, I believe, ruled incorrectly that Cruz didn't apply in his case based on the fact that Valco had testified. But you're not arguing that in the brief. I mean, you're arguing strictly ineffective assistance, not jury support. Yes, I am. And I'm saying that it's too late. He was untimely in his objections. I don't know if he was taken by surprise with this dog evidence, but he should have moved in limine if he wasn't taken by surprise. It should have been in the police reports that they used the dog. But the trial also ruled that the evidence relating to what indications the dog made and the contraband that was found thereafter was cumulative or corroborative of what the police officers testified to. Exactly, and that's why he should have objected as soon as he saw the word dog. I mean, there should have been a reaction from the attorney, preferably before trial, but certainly at trial when Valco said that the dog showed them where the illegal drugs were. Go ahead. Don't we let a witness say, I was walking down the street and I saw someone point in that direction, so I looked in that direction? Isn't that admissible? Well, that's admissible, but it went beyond that in this case because the dog wasn't just pointing at something. He was doing an article search, and the article search connected the defendant to the drugs. That was the point. That's a term of art, that the article search is a term of art? I think it's a police term of art because the prosecutor and the dog handler and Valco all used it. They all said it was an article search, which specifically implies there must have been an article, logically to my way of thinking, and the way Mahoney described it. I can't remember if I've got it in my notes, but he said— Could the dog have been confused and had forgotten about the article and decided to search for marijuana or cocaine or something like that? He could have been searching for a lady dog. I don't know what—yeah, he was trained. I think on redirect they brought out that he was trained in drug searching also. The dog was certified, was he not? I don't know what he was. Officer Mahoney said that he had taken canine training classes, and he'd taken a lot of them. And that's a foundational question, as you pointed out, Your Honor. But there wasn't any foundation given to this. I don't think we even know what kind of dog this was. I'm not sure if he stated that it was a German Shepherd mix or anything. It sounds very erudite, whatever it was. He'd taken so many courses. Well, no, Officer Mahoney said he had taken canine training classes. He didn't say he brought Butch with him. Butch or whoever, I don't remember the dog's name. The officer got the canine training classes, not the dog? As a human being, I think that both of them would go to these classes. But Mahoney was the only one to testify, and he said he had taken training classes. And he may have taken them with another dog. This could have been a new dog for Officer Mahoney. I mean, we know nothing about this dog, really. And I don't know that he's an experienced trailer of articles. Is there any case law that relates to what you essentially are, I think, arguing, and that is that this type of evidence is incompetent and inadmissible because it isn't quite the same thing as bloodhound case law? There may not be any case law, and you may be arguing persuasiveness based upon bloodhound law, but are you aware of any prior precedent, which is redundant, any precedent that suggests that this type of testimony relating to this type of search or finding by a dog is incompetent? I'm not aware of that. I focused on the Illinois law because the Illinois law has not changed. You know, I cited the Loeffler case from 1998, which was pretty clear that Illinois' position has not changed. The only thing the police had found was a bag of cannabis, and they didn't. They found this cocaine and told the jury that the dog found it, and the prosecutor argued that in closing argument, which I think, you know, settled everything, that it was, and it's the main issue in the case, whether they could connect the defendant to drugs found in someone else's porch. And this was a very high drug crime area, so it's not unlikely that someone else might have been in the area selling cocaine. Did the police officers testify that the contraband was found in plain view, or did I miss it? I don't think so. It sounds like it would have been considered plain view, but the prosecutor argued that the police officer didn't. Is that what you said? No, I said I thought that the testimony was that it was in plain view, but it was dark, and therefore the view was obscured by darkness. That if it had been during the daylight, they probably would not have needed the dogs because they would have seen the contraband had they walked in that general direction. The judge made that comment, I believe. The prosecutor was commenting about them being able to see it. He may have said plain view, but the police officers consistently testified that it was very well lit. Very what lit? That the area was very well lit because, no doubt, of it being a very high drug crime area. So they would have been able to see things. There could be other reasons for why it was well lit, too. There could have been any number of reasons, but I think those two things have some interplay here. But the officers who were actually there said it was well lit. I think if trial counsel additionally had he requested a mistrial, or at least to try and convince, I don't know that he could have convinced the court, but I just wanted to point out that he didn't very strongly, although he pointed out the Cruz case, he didn't pursue it any further, and he did mention it in his post-trial motion, but it was untimely by the time he brought it up, and I'm unclear why. I think it would have been brought up. It should have been brought up in limine. If it had been, do you think the trial court would have ruled differently? Because the trial court was made aware of Cruz and said, I'm going to study this case overnight, and then came back and ruled a certain way on that. I'm wondering if the trial court would have ruled differently if it had been brought up in limine. I'm not sure either based on the judge's comments that this case, he found this case distinguishable from Cruz, and I don't think it's distinguishable from Cruz because evidence was brought in for a factual proposition, and they may have been able to, the state, I mean, you know, it's hard to say. The state might have gone ahead just saying that the evidence was in plain view, and the defense counsel would have responded appropriately to that. I mean, this trial could have gone in a whole other direction, I suppose. If the trial court had determined that it should not have been admitted into evidence, it did have within the time frame available the opportunity to tell the jury to disregard the testimony. Is that correct? Yes. But as we all know, unringing the bell is a difficult proposition. Well. And we'd prefer it not to. The analogy I like better is if you pound a nail into a board and pull it out, the hole doesn't disappear. We'll try to remember that, Your Honor. Is there anything further? Thank you. Thank you. Ms. Shanahan. Does a German shepherd only understand Deutsch? I don't think it matters. I confess to this court I come to you as a very biased person. Sitting out in my car right now is a 30-pound Welsh corgi, and I can tell you that I regularly show him, and one of the exercises he has to do is to have 12 identical articles laying in the ring. I have two, which I don't pick out. The judge picks them out. He hands me that article. I handle it. The judge puts it in that pile while my back and the dog's back are turned, and I turn around and I say, Sam, find it. And Sam goes out there, and with only his nose to do it, and regardless of whether there's lady dogs around and regardless of whether there's sometimes hundreds of other dogs around and hundreds of people around, Sam goes out and finds that article with his nose. These dogs are so highly trained. I think you need to make that article to the Supreme Court because they've already ruled against it. You're right. We've got to follow what he says. I guess I'm preserving that. If it goes up, it incensed me. But I think it does enter into this case in that Officer Mahoney did testify that his dog can locate an article by scent detection, but he also testified that his dog was a trained narcotics dog. He didn't testify that the hitting on a scent object is different than on a narcotics object, did he? No. He just said the dog was trained in both things. So the jury was left with this idea that the dog smelled something of the defendant's and then went looking for something of the defendant's and may have hit on narcotics or may have hit on something held by the defendant previously. I would disagree with that because of the testimony of the – that the dog was hitting on the narcotics. But I think we need to focus on the frame of this case here. We are dealing with ineffective assistance of counsel. And so we need to see, did the trial attorney do something wrong? And if he did something unreasonably wrong, and if so, did it prejudice the defendant? As soon as Mahoney started to testify about his search with the dog, and keep in mind he's searching in the area where the object had been seen to be thrown. As soon as he started to testify, the defense counsel objected to the admission of the testimony. During redirect, the defense counsel objected twice more. And he cited at that point in time, he cites and argues the application of Cruz. Then the next day, before they even get started, he's back again. And he's once again arguing, here's Cruz. You can't let this in. Look at Cruz. And the trial court's reasoning in allowing the evidence I think is right on point. He says that the dog simply pointed the officers in the same direction as Officer Valco, which simply corroborated Officer Valco's testimony. Now, it's important that this dog really didn't indicate on the cocaine at all. He indicated on marijuana, which the defendant was never charged with. He did not indicate on the cocaine. He indicated on the marijuana. And they went to this little patio area, which is right where Officer Valco saw this shiny plastic thing being thrown. It's a patio with a little metal railing. I believe there's some pictures in the record of it. The whole area is fenced off. Officer Valco had found drugs there anyway. So what the dog is, Officer Valco says, I saw drugs here. The dog says, I did too. That's the most you can say about it. Furthermore, the trial court pointed out that the dog was trained in both article detection and narcotics, and there's no testimony that the dog specifically picked up on the defendant's scent. Officer Mahoney never testified that the dog picked up on the defendant's scent. What did the State argue, though, in the end? I mean, what specifically? Did they tie both the scent in the article, or did they, or rather the scent in the narcotics? Or did they just say he found? The dog doesn't. The dog evidence basically was argued to confirm the testimony, the people testimony. Did defense counsel ever argue that we really don't know whether the dog was homing in on the scent of the defendant or was homing in on the scent of the contraband? You said did defense counsel argue that? Yes. And what was the response by the trial court? The trial court said that because, that it was immaterial since the dog was trained in both. And he also said that it was, that the dog's testimony was simply corroborative of Officer Valco's testimony. I think this gets to a question that arose earlier, which is defense counsel is arguing that this should have been raised in a motion in limine. The motion in limine would have been the exact same arguments that defense counsel strongly and strenuously argued in the trial court on exactly the same case law that appellate counsel is arguing before you today. The trial court said at that time, Cruz does not apply. He would have said that in a motion in limine. So, and as you point out, had he been persuaded by this argument, it's hard to see how he could have, given his reasonings for denying it when it arose in counsel. Had he presented it in a motion in limine, I mean, had he done it at trial and won, the jury could have been instructed to disregard. This is maybe not the perfect answer, but it's the answer that has always held forth in criminal cases, and one of the big premises of our jury system is that a properly instructed jury is going to follow the instructions that are given to us or given to them. So I think it's important you ask, Justice McClaren, you ask about other cases that have dealt with similar issues. This court in Moore found that a police officer's testimony about the actions of a police dog are not hearsay. And then both the Supreme Court and this court have said that a specially trained police, excuse me, let me, lost my place here. Both this court and the Supreme Court have noted that the use of trained dogs as a follow-up investigative technique to partially corroborate information received is a useful, entirely reasonable, and permissible procedure. That's the Supreme Court in People v. Campbell and this court in People v. Moore. And I think that's exactly what we have here is the use of a trained dog as a follow-up investigative technique. I would be perfectly willing to talk to you about the Oliver issue, although most of the questions that you asked my opponent were the points that I would make. Certainly, a defendant cannot claim a due process violation unless that, first of all, he has to prove that there is a violation, second of all, he has to prove that that violation prejudiced him, and then the indictment should be dismissed only if it's unequivocally clear that there was a denial. The differences between Oliver and this case are glaringly efficient. The exact question that the prosecutor asked Detective Hall was, Are you familiar with the events that occurred on July 3rd, 2007 at approximately 125 in the morning involving Officer Bauco of the Waukegan Police Department and other members of the Waukegan Police Department? Now, I don't think that is any way hiding. I don't think that is in any way lying. I could tell you that I am aware that Tiger Woods ran into a tree down in Florida last week, but I don't think you would think that I witnessed it. When the phrase familiar is used, that indicates knowledge, and I think particularly when it is followed by the events involving Officer Bauco, I think that, I don't know how you could be more clear to the jury that this officer did not witness these events. And furthermore, in Oliver, quite honestly, you can't, the police officer lied. I mean, he certainly gave the impression that not only had he witnessed these things, but he actually saw the passage of drugs from someone else to Mr. Oliver. And that's not what happened. What he saw was something passed to Mr. Oliver, and then he got in a car, and then another police officer stopped Mr. Oliver, and that's when they found cocaine. There was nothing connected to the past package to the cocaine in the car. Whereas here, everything that Officer Hall testified to was exactly what Officer Bauco testified to. Detective Hall said that he saw, Officer Bauco saw the defendant look at him and then began to walk away. So you're saying that the testimony given by the witness before the grand jury was sufficiently consistent with what the testimony was at trial that is within a reasonable degree of legal certainty that the grand jury would not have come to a different conclusion? Absolutely. And you know what, I can't add anything other than that. So unless you have any other questions? Well, Moore and Campbell dealt with drugs specifically, correct? I'm sorry? Matt Moore and Campbell dealt with drugs specifically, drug dogs, and Cruz and Loeffler dealt specifically with human tracking, correct? Correct. Would you agree that this case does present a hybrid of those two? No, because if this dog was tracking anything, he was tracking drugs, not people. How do we know that? It is my recollection that that's the testimony of the officer that handled the dogs. I haven't looked at the record in several months, but that's my recollection. Any other questions, Ron? Nope. Thank you. Ms. Johnson, you may proceed. I disagree with my opponent. I think that the testimony was consistent in the trial court that he was ñ he started from the area where the defendant was being held. That was Mahoney's testimony. He didn't explain what article he was searching, but he said he was doing an article search, and then he explained that an article search is when you follow a person's scent that flows from that article. So now whether the dog changed his mind and went on a drug search is the question. The dog apparently did change his mind. His indication was supposed to be a down and a tampon, and instead he puts his paws up on the railing. And the mere fact that the police found the cannabis rather than the cocaine first, I don't ñ I'm not sure that has any significance. That might relate to the darkness of the patio or the ñ whether it really was very well lit. The fact remains this dog leads them to an area that has narcotics, an area that is, according to Officer Valco, in the vicinity of where he saw the defendant, I guess, for the second time, and at that point throw something, or I can't remember, the second or third time. He didn't remember either. He was confused on the number of times. But, yeah, it wasn't in the general area that it was found. But ñ And then he goes to look. He had been there for 15 minutes before he went over there to look. He was guarding the scene, although at 1.30 in the morning either there were parades of people passing through this area or selling drugs, or there was nobody, and they could have seen this if it was in plain view. There were three officers standing there waiting, guarding the area. If drugs weren't visible, I would think they would have seen them. The defendant did testify, did he not? He did testify, and he testified that he and Valco talked, and Valco denied that he talked with the defendant. But the defendant didn't say, I threw a five-pound weight over by the patio because it was slowing me down. Well, they talked ñ this was before any throwing had occurred. Well, what I'm getting at is the defendant did testify on his own behalf, but he never explained or ñ maybe he did deny, but I don't think that he ever explained that he had thrown something other than drugs, that if they had looked and it was a scent search, they would have found my lunch bag or a bottle of beer that I was holding in a brown paper bag because I'm discreet. Do you see what I'm getting at? Yes. There was nothing to contradict from the defendant that what was thrown was something that was innocuous and not contradictory. I think implicitly he was admitting that the cannabis might have been near him, but I don't think he was ever connected to the cocaine except through the dog, and that's the problem. And it would have been very easy. There was testimony that they didn't request fingerprints. If he'd been holding these bags of cocaine and cannabis, his fingerprints would have been all over them. He threw them. It was, you know, beginning of July, it was 4th of July. You know, that would have been a slam dunk on this. And I just wanted to comment on counsel's comment that trial counsel objected in a timely manner. He was timely in objecting to Mahoney's testimony, but the nail was already in the wood because Valco had already testified. And likewise, counsel's testimony about her dogs, well, she should have presented that in the trial court if she wanted to establish that dogs are that reliable, and maybe the Supreme Court would have some evidence then. But in this case, there's no evidence that this dog could actually track. We're therefore asking that his convictions be reversed. Anything further? Thank you very much. Thank you. There's one more case on the call. We will take a recess until 1 o'clock.